UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------X
JOSEPH A. FERRARA, SR., *et al.*, as
Trustees and Fiduciaries of the Local
282 Welfare Trust Fund, the Local 282
Pension Trust Fund, the Local 282
Annuity Trust Fund, the Local 282 Job
Training Trust Fund, and the Local
282 Vacation and Sick Leave Trust
Fund,

                   Plaintiffs,

    - against -

PROFESSIONAL PAVERS CORP., AAP ARTIN
ARCHITECTURAL PAVERS CORP., and
DUARTE N. LOPES,

                  Defendants.
-----------------------------------X

**NOT FOR PUBLICATION**

**ORDER ADOPTING REPORT
AND RECOMMENDATION**

11-CV-1433 (KAM)(RER)

**MATSUMOTO, United States District Judge:**

On March 23, 2011, the Trustees and Fiduciaries of the
Local 282 Welfare, Pension, Annuity, Job Training, and Vacation
and Sick Leave Trust Funds ("plaintiffs" or the "Funds")
commenced this action against Professional Pavers Corp.
("Professional Pavers"), AAP Artin Architectural Corp. ("AAP"),
and Duarte N. Lopes ("Lopes") pursuant to Sections 502(a)(3) and
515 of the Employee Retirement Income Security Act of 1974
("ERISA"), 29 U.S.C. §§ 1132(a)(3), 1145. (*See* ECF No. 1,
Complaint dated 3/21/11 ("Compl.").)  In their Complaint,
plaintiffs seek recovery of unpaid employee benefit

contributions, liquidated damages, interest, and related attorneys' fees and costs from AAP based upon AAP's "alter ego and single or joint employer relationship" with Professional Pavers.[1] (*See* Compl. at 2.)

On March 30, 2011, plaintiffs properly served AAP with the Summons and Complaint in accordance with Federal Rule of Civil Procedure 4. (*See* ECF No. 3, Executed Summons as to AAP entered 4/4/11.)  On May 6, 2011, plaintiffs filed a Motion for Entry of Default against AAP pursuant to Federal Rule of Civil Procedure 55(a), upon AAP's failure to answer or otherwise defend against the Complaint. (*See* ECF No. 7, Motion for Entry of Default as to AAP dated 5/6/11.)  On May 9, 2011, the Clerk of Court entered default against AAP. (*See* ECF No. 10, Entry of Default entered 5/9/11.)  On July 9, 2012, pursuant to Rule 55(b)(2), plaintiffs filed a Motion for Entry of Default Judgment against AAP. (*See* ECF No. 19, Motion for Default Judgment as to AAP dated 7/9/12 ("Default Mot."); ECF No. 20, Declaration of Theresa Cody in Support of Default Mot. dated 7/3/12 (Cody Default Decl."); ECF No. 21, Declaration of Ken

---

[1] On December 18, 2012, the court entered a Revised Stipulation of Dismissal and dismissed with prejudice all claims asserted by plaintiffs against defendant Professional Pavers and defendant Lopes pursuant to a settlement agreement dated July 24, 2012. (*See* ECF No. 24, Plaintiffs' Settlement Agreement with Professional Pavers & Lopes dated 7/24/12; ECF No. 25, Stipulation of Dismissal between Plaintiffs & Defendants Professional Pavers & Lopes dated 7/25/12; ECF No. 27, Stipulation & Order of Settlement between Plaintiffs & Defendants Professional Pavers and Lopes dated 12/7/12; ECF No. 28 Revised Stipulation & Order of Dismissal entered 12/18/12.)

Jones in Support of Default Mot. dated 7/9/12 ("Jones Default Decl."); ECF No. 22, Declaration of Michael Adler in Support of Default Mot. ("Adler Default Decl."); ECF No. 23, Memorandum in Support of Pls.' Default Mot. dated 7/9/12 ("Default Mem.").) By Order dated August 31, 2012, the court referred plaintiffs' Motion for Default Judgment to Magistrate Judge Ramon E. Reyes, Jr. for a Report and Recommendation. (*See* ECF No. 26, Order dated 8/31/12.)

On February 15, 2013, Judge Reyes issued a Report and Recommendation ("R&R"), recommending that default judgment be entered against AAP and that plaintiffs be awarded damages, reasonable attorneys' fees, interest, and costs. (*See* ECF No. 29, Report & Recommendation dated 2/15/13 ("R&R").) On February 19, 2013, plaintiffs served a copy of the R&R on AAP. (ECF No. 31, Certificate of Service of R&R on AAP dated 2/19/13.) As explicitly noted at the end of the R&R, any written objections to the R&R were to be filed within fourteen days of service of the R&R. (R&R at 23); *see* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).

On March 1, 2013, plaintiffs filed a timely objection to the R&R and properly served that objection on AAP. (*See* ECF No. 32, Objection to R&R dated 3/1/13 ("Pls.' Obj."); ECF No. 33, Declaration of Michael Adler in Support of Objection ("Adler

3

Obj. Decl."); ECF No. 34 Certificate of Service of Pls.' Obj.
and Adler Obj. Decl. entered 3/1/2013.)  To date, AAP has not
filed any objections to the R&R and has not responded to
plaintiffs' objection, and the time to do so has expired.

For the following reasons, the court respectfully
overrules plaintiffs' objection and affirms and adopts Judge
Reyes' R&R in its entirety as the opinion of the court.

<u>**BACKGROUND**</u>

The detailed facts of this case, which are undisputed
by AAP, have been set forth previously in Judge Reyes' R&R.  As
such, the court repeats the relevant facts here only as
necessary to address plaintiffs' limited objection to Judge
Reyes' R&R.

I.    <u>**Plaintiffs' Motion for Default Judgment**</u>

In their default motion, plaintiffs seek an award of
reasonable attorneys' fees pursuant to ERISA and the applicable
Restated Agreement and Declaration of Trust ("Trust Agreement").
(Default Mem. at 12; Cody Default Decl., Exh. A, Trust
Agreement, art. IX § 3(a), at 30 ("Attorney's fees in collection
actions . . . shall be equal to the actual amount to be billed
to the Trustees by their counsel for work performed in
connection with this matter . . . ."))*; see* 29 U.S.C.
§ 1132(g)(2)(D) ("In any action under this subchapter by a

fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan . . . reasonable attorney's fees and costs of the action, to be paid by the defendant . . . ."). Specifically, plaintiffs request attorneys' fees based on the following hourly rates:

(1)   partners at $370 prior to July 2011 and at $400 thereafter;

(2)   associates at $275 prior to July 2011;

(3)   senior associates at $375 as of July 2011;

(4)   junior associates at $275 as of July 2011; and

(5)   paralegals at $90 prior to July 2011 and at $110 thereafter.[2]

(*See* Default Mem. at 12-14; Adler Default Decl. ¶ 50.)

        Plaintiffs maintain that these requested hourly rates are reasonable because such rates "are in line with or less than those charged by other firms performing similar work within the Eastern and Southern Districts of New York." (Default Mem. at 12-13 (citing cases); *see also* Adler Default Decl. § 52.) Plaintiffs further contend that their requested rates reflect the "unique expertise" and experience of their attorneys from Cohen, Weiss and Simon LLP ("CWS"), a law firm "engaged almost

---

        [2] On July 1, 2011, plaintiffs' counsel increased the rates of some of their professionals, at least with respect to their client, the Funds. (*See* Adler Default Decl. ¶ 50.)

5

exclusively in the representation of labor unions and employee benefit plans."[3] (Adler Default Decl. § 52.)

Plaintiffs also itemize the tasks performed by their legal counsel in litigating this action. (Default Mem. at 13-14; Adler Default Decl. § 51.)  Plaintiffs argue that two particular tasks — computing the damages owed by AAP and preparing the default motion — were "extremely complicated" in light of the discovery conducted, the settlement agreement, and the "multitude of audits, credits, and payments." (Adler Default Decl. § 51; *see also* Default Mem. at 13-14.)

II.  **The Report and Recommendation**

As Judge Reyes noted in his R&R, "[i]n evaluating the reasonableness of attorneys' fees, the Second Circuit applies a 'presumptively reasonable fee,' determined [in part] by a 'reasonable hourly rate.'" (R&R at 16 (quoting *Finkel v. Omega Commc'n Servs., Inc.*, 543 F. Supp. 2d 156, 164 (E.D.N.Y.

_____

[3] Plaintiffs set forth the law school almae matres, graduation dates, and years of ERISA-related experience of their CWS attorneys as follows: Thomas N. Ciantra, a 1987 Harvard Law School graduate, has been practicing in the labor and employee benefits field since 1989; Joseph J. Vitale, a 1989 Fordham University Law School graduate, has been practicing in the labor and employee benefits field since 1990; Elizabeth O'Leary, a 1996 graduate of Cornell Law School, has been practicing in the labor and employee benefits field since 1998; David R. Hock, a 1999 American University Washington College of Law graduate, has been representing labor unions and employee benefit plans since 2000; Michael S. Adler, a 2002 George Washington University Law School graduate, has been practicing in the labor and employee benefits field since 2003; Zachary N. Leeds, a 2004 Harvard Law School graduate, has been practicing in the labor and employee benefits field since 2005; and Danya Ahmed, a 2010 Pennsylvania State University Dickinson School of Law graduate, has been practicing in the labor and employment practice since 2011. (Adler Default Decl. ¶ 52.)

2008)).)  After looking to the prevailing hourly rates in this district, Judge Reyes determined that "[r]ecent opinions have found that reasonable hourly rates for this district range from $300-450 per hour for partners, $200-300 for senior associates, $100-200 for junior associates, and $70-80 for legal assistants." (*Id.* at 16-17 (citing cases).)

Because plaintiffs' requested hourly rate for the partners fell within the range of reasonable hourly rates in the Eastern District, Judge Reyes recommended $400 per hour for partner time. (*Id.* at 17.)  The requested amounts for senior associates, junior associates, and paralegals fell outside the relevant ranges and were therefore reduced. (*Id.*)  Recognizing "the demonstrated skill and experience of counsel in preparing this case," Judge Reyes "recommend[ed] rates at the upper end of the typical awards in this District: $300 per hour for senior associates, $200 per hour for junior associates, and $80 per hour for paralegals." (*Id.*)[4]

---

[4] Further, Judge Reyes found that the billed hours requested by plaintiffs were reasonable. (*Id.* at 19.)  Judge Reyes reasoned that

> this case is an atypical default judgment, insofar as AAP Artin is found to share an alter ego/single employer relationship with Professional Pavers, which . . . appeared and defended against this action.  By virtue of this relationship, the time expended in litigating this case against Professional Pavers and Lopes is attributable to AAP Artin, notwithstanding the latter's default.

(*Id.* at 18.)

7

### III.  **Plaintiffs' Objection**

In their sole objection to the R&R, plaintiffs challenge Judge Reyes' reduction of their requested hourly rates for the period after July 1, 2011, when plaintiff's counsel increased their billing rates. (*See* Pls.' Obj. at 2.) Specifically, plaintiffs challenge Judge Reyes' hourly rate reduction in the following amounts: a reduction of $75 per hour for senior and junior associates, and a reduction of $30 per hour for paralegals. (*See id.* at 2, 7.)  Conceding that this district "has never established uniform rates to be awarded in ERISA cases, and [that] fee awards have fluctuated with respect to the hourly rates that have been approved in the past," (*id.* at 3), plaintiffs contend that their requested hourly rates are what reasonable clients would be willing to pay, (*id.* at 2 (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 493 F.3d 110, 117 (2d Cir. 2007), *amended on other grounds,* 522 F.3d 182 (2d Cir. 2008)), and "are entirely consistent with the range of hourly rates that this Court has approved as reasonable in similar ERISA actions," (*id.*)  Thus, plaintiffs assert that their requested "rates should be approved as reasonable, particularly given that the Report acknowledges the 'demonstrated skill and experience of counsel in preparing this case.'" (*Id.* at 2 (quoting R&R at 17).)

Plaintiffs then cite and rely upon a plethora of cases purporting to demonstrate that their requested hourly rates for associates and paralegals are reasonable. (*Id.* at 3-5.) Specifically, plaintiffs assert that the R&R's "recommended rates . . . are substantially lower than the hourly rates that this Court has previously approved for these same Trustees with respect to the hourly rates that they have negotiated with their attorneys." (*Id.* at 3.) Additionally, plaintiffs contend that "as far back as 2006, other benefit fund trustees have been awarded fees comparable or higher than the requested rates here on ERISA default motions." (*Id.* at 4.) Moreover, plaintiffs argue that the R&R's "recommended reductions are commensurate, and in certain instances, below the hourly rates that . . . have been reported in cases that were decided prior to the negotiated July 2011 rate increase." (*Id.* at 4-5.)

In addition, plaintiffs emphasize that this action is "different in kind than an ordinary default application" in light of the many depositions and the irregular and detailed portions of the default motion that Judge Reyes found convincing. (*Id.* at 5.) In particular, plaintiffs cite *La Barbera v. Best Friends Trucking Co.*, No. 07-CV-4226, 2010 WL 1692509, at *2 (E.D.N.Y. Apr. 27, 2010), for the proposition that it is reasonable to award hourly rates higher than the

9

prevailing rates in cases involving "'time-consuming and painstaking'" work, such as here. (Pls.' Obj. at 5-6.)

Finally, plaintiffs argue "that the substantial reduction in the recommended hourly rate runs contrary to ERISA's remedial purpose, which . . . requires the Trustees to pursue aggressive collection efforts." (*Id.* at 6 (citing cases).) Plaintiffs instead maintain that their requested hourly rates "are fully consistent with and a product of the work required of the Trustees to fulfill their fiduciary obligations under ERISA." (*Id.*)

## **STANDARD OF REVIEW**

In reviewing a Report and Recommendation, a district "court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party makes specific and timely objections to a magistrate judge's findings or recommendations, the district court must apply a *de novo* standard of review to the portions of the R&R to which the objection is made. *Mazzei v. Abbott Labs. & Co.*, No. 10-CV-1011, 2012 WL 1101776, at *1 (E.D.N.Y. Apr. 2, 2012) (citing Fed. R. Civ. P. 72(b)(3); *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010)); *see also* 28 U.S.C. § 636(b)(1).

Where no proper objection to a Report and

Recommendation has been timely made, the district court "'need only satisfy itself that that there is no clear error on the face of the record.'" *Jarvis v. N. Am. Globex Fund, L.P.*, 823 F. Supp. 2d 161, 163 (E.D.N.Y. 2011) (quoting *Wilds v. United Parcel Servs.*, 262 F. Supp. 2d 163, 169 (S.D.N.Y. 2003)); *see also Urena v. New York*, 160 F. Supp. 2d 606, 609-10 (S.D.N.Y. 2001). Moreover, where "the objecting party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the report and recommendation strictly for clear error." *Zaretsky v. Maxi-Aids, Inc.*, No. 10-CV-3771, 2012 WL 2345181, at *1 (E.D.N.Y. June 18, 2012) (internal quotation marks omitted); *see also Soley v. Wasserman*, 823 F. Supp. 2d 221, 228 (S.D.N.Y. 2011).

## DISCUSSION

The court has reviewed *de novo* the portion of the R&R that is specifically addressed in plaintiffs' sole objection to Judge Reyes' reduction of plaintiff's requested hourly rates. As explained below, the court adopts the hourly rates established in the R&R, overrules plaintiffs' objection, and supplements Judge Reyes' analysis as set forth below. Furthermore, the court has reviewed the factual and legal conclusions of the portions of the R&R to which no objection has been made for clear error. Having found none, the court adopts

11

and affirms Judge Reyes' well-reasoned, legally supported, and thorough R&R in its entirety.

I. _De Novo_ **Review of the Reduced Hourly Rates**

    A. **Applicable Law**

Although an award of reasonable attorneys' fees is mandatory in this action pursuant to 29 U.S.C. § 1132(g)(2)(D) and the Trust Agreement, the court has the sound discretion to determine the reasonable hourly rates applied to the time expended by plaintiffs' attorneys. _See La Barbera v. Tadco Constr. Corp._, 647 F. Supp. 2d 247, 253-54 (E.D.N.Y. 2009).  In _Arbor Hill_, the Second Circuit explained that, when determining the reasonableness of attorney's fees, the preferred course is for the court,

> in exercising its considerable discretion, to bear in mind _all_ of the case-specific variables that [the Second Circuit] and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable hourly rate.  The reasonable hourly rate is the rate a paying client would be willing to pay.  In determining what rate a paying client would be willing to pay, the district court should consider, among others, the _Johnson_ factors;[5]

---

[5] The twelve factors set forth by the Fifth Circuit in _Johnson v. Ga. Highway Express, Inc._ are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill required to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional

> it should also bear in mind that a
> reasonable, paying client wishes to spend
> the minimum necessary to litigate the case
> effectively.  The district court should also
> consider that such an individual might be
> able to negotiate with his or her attorneys,
> using their desire to obtain the
> reputational benefits that might accrue from
> being associated with the case.

493 F.3d at 117-18 (emphasis in original).  "In considering

these case-specific factors, the court approximates the market

rates 'prevailing in the community for similar services of

lawyers of reasonably comparable skill, experience, and

reputation.'" *Carco Grp., Inc. v. Maconachy*, No. 05-CV-6038,

2011 WL 6012426, at *2 (E.D.N.Y. Dec. 1, 2011) (quoting *Cruz v.

Local Union No. 3 of IBEW*, 34 F.3d 1148, 1159 (2d Cir. 1994)).

Generally, the "community" is defined as the district in which

the court sits. *E.g.*, *Arbor Hill*, 493 F.3d at 111; *Polk v. N.Y.

State Dep't of Corr. Servs.*, 722 F.2d 23, 25 (2d Cir. 1983);

*U.S. Bank, N.A. v. Byrd*, 854 F. Supp. 2d 278, 286 (E.D.N.Y.

2012).

The prevailing market rate in the community is then

used "in calculating the lodestar, or what the Second Circuit is

now calling the 'presumptively reasonable fee.'" *Lynch v. Town

of Southampton,* 492 F. Supp. 2d 197, 210-11 (E.D.N.Y. 2007)

---

relationship with the client; and (12) awards in similar cases. 488 F.2d 714,
717-19 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron,*
489 U.S. 87 (1989).

(citing *Blum v. Stenson,* 465 U.S. 886, 895 (1984)), *aff'd*, 2008 WL 5083010 (2d Cir. Dec. 2, 2008) (summary order).   In determining the prevailing market rates, the court should rely on the hourly rates awarded in comparable actions in Eastern District opinions and on its own knowledge of the prevailing rates in this district. *See La Barbera v. Smith*, No. 08-CV-3983, 2011 WL 7139122, at *2 (E.D.N.Y. Dec. 7, 2011) (citing *Finkel v. Universal Sec. Sys.*, No. 10-CV-4520, 2011 WL 5402070, at *9 (E.D.N.Y. Sept. 9, 2011), *adopted by* 2012 WL 314003 (E.D.N.Y. Feb. 1, 2012).

**B.   Analysis and Application**

Recently, reasonable hourly rates in this district have ranged from approximately $200-300 for senior associates, $100-$200 for junior associates, and $70-$100 for paralegals. *See, e.g.*, *Chen v. Cnty. of Suffolk*, No. 07-CV-3698, 2013 WL 827711, at *12 (E.D.N.Y. Mar. 7, 2013) (citing cases); *Spence v. Ellis*, No. 07-CV-5249, 2012 WL 7660124, at *5 (E.D.N.Y. Dec. 19, 2012) (collecting cases), *adopted by* 2013 WL 867533 (E.D.N.Y. Mar. 7, 2013).   Because default actions are generally simpler and more straightforward than other legal matters, Eastern District opinions have frequently found that reasonable hourly rates in ERISA-default actions are closer to the lower end of these ranges. *See Gesualdi v. Magnolia Pro Trucking Inc.*, No.

14

11-CV-4082, 2012 WL 4036119, at *9 (E.D.N.Y. Aug. 20, 2012) ("Specifically, in ERISA default cases, courts in this District have consistently approved rates that are closer to the lower range of fees allowed.") (citing and collecting cases), *adopted sub nom. by Gesualdi v. Magnolia P R O Trucking Inc.*, 2012 WL 4035779 (E.D.N.Y. Sept. 11, 2012).  Thus, in recent ERISA-default actions, Eastern District opinions have generally found that reasonable rates are approximately $200-$300 for senior associates, $100-$175 for junior associates, and $70-$90 for paralegals. *See, e.g., Ferrara v. Reliable Indus. II, Inc.*, No. 11-CV-1434, 2012 WL 6851088, at *6 (E.D.N.Y. Sept. 27, 2012) (collecting cases), *adopted by* 2013 WL 146085 (E.D.N.Y. Jan. 14, 2013); *La Barbera v. VLF11 Mgmt. Corp.*, No. 08-CV-2615, 2012 WL 1576109, at *7 (E.D.N.Y. Apr. 3, 2012), *adopted by* 2012 WL 1576114 (E.D.N.Y. May 4, 2012); *Gesualdi v. Stallone Testing Labs., Inc.*, No. 10-CV-646, 2010 WL 7066679, at *7 (E.D.N.Y. Dec. 17, 2010), *adopted by* 2011 WL 2940606 (E.D.N.Y. July 19, 2011).

Here, plaintiffs seek hourly rates of $375 for senior associate time, $275 for junior associate time, and $110 for paralegal time, based on a rate increase to plaintiffs effective

July 1, 2011.[6] (Pls.' Obj. at 2-3.)  All of these requested rates
are well above the ranges for prevailing reasonable hourly rates
in ERISA-default cases in the Eastern District.  Having
considered the prevailing rates in this district, the relative
complexity of this ERISA-default action, the experience and
reputation of plaintiffs' counsel, and the skill and time needed
to litigate this matter, the court finds that Judge Reyes'
recommended hourly rates of $300 for senior associate time, $200
for junior associate time, and $80 for paralegal time are
reasonable and amply supported by the hourly rates awarded in
other ERISA-default cases in the Eastern District.

**C.   Plaintiffs' Arguments**

**1.   Case Law Cited by Plaintiffs**

In their objection to the R&R, plaintiffs' primarily
rely on cases purporting to show that their requested hourly
rates are reasonable.  In doing so, plaintiffs cite to six
Southern District opinions that have approved hourly rates
similar to plaintiffs' requested rates.  These Southern District
cases, however, are not probative of the prevailing rates in the
Eastern District, where prevailing rates are, as a general
matter, "substantially lower" than the prevailing rates in the

_____

[6] Prior to July 1, 2011, all associates were billed at $275 per
hour, without distinguishing between senior and junior associates, and all
paralegals were billed at $90 per hour. (Pl.'s Obj. at 3.)

Southern District. *Simmons v. N.Y.C. Transit Auth.*, 575 F.3d 170, 172 (2d Cir. 2009); *see also Green v. City of New York,* No. 05-CV-429, 2009 WL 3063059, at *9 (E.D.N.Y. Sept. 21, 2009) ("A survey of more recent Southern District cases suggests that rates in that district have increased in the past decade and are now higher than the rates in this District."). Moreover, the court finds that the Southern District cases to which plaintiffs cite should not serve as the baseline in determining the reasonable hourly rates that are appropriate in this case. *See Siracuse v. Program for the Dev. of Human Potential*, No. 07-CV-2205, 2012 WL 1624291, at *24 n.23 (E.D.N.Y. Apr. 30, 2012) ("Unfortunately, the cases cited . . . are all decisions rendered in cases brought before the Southern District of New York. Since the Court is required by the Second Circuit to apply reasonable rates from this district, the case law cited is of marginal assistance." (citation omitted)).

Instead, plaintiffs' hourly rates are properly determined by first looking to the prevailing rates in the Eastern District. *Simmons*, 575 F.3d at 172; *Arbor Hill*, 522 F.3d at 111; *Polk*, 722 F.2d at 25.[7]  Accordingly, plaintiffs' reliance

---

[7] In certain circumstances, the court may adjust base hourly rates to account for a plaintiff that has retained an out-of-district counsel. "[W]hen faced with a request for an award of higher out-of-district rates, a district court must first apply a presumption in favor of application of the forum rule.  In order to overcome that presumption, a litigant must

on Southern District opinions is misplaced and fails to demonstrate the reasonableness of plaintiffs' requested hourly rates.

Furthermore, the Eastern District cases cited by plaintiffs fare no better and fail to provide any basis to depart from Judge Reyes' reduction of plaintiffs' requested hourly rates.  Upon careful review, the court is not persuaded by any of the Eastern District ERISA-default opinions that have awarded rates similar to plaintiffs' heightened rates for the reasons explained below.

First, the court finds that seven of the cited Eastern District cases provide little to no reasoning in support of the reasonable hourly rates awarded to the plaintiff in those cases. Absent such reasoning, the court finds scant support for the plaintiffs' requested rate and, in any event, is unable to determine whether the cited cases support a heightened hourly rate in this case under these factual circumstances.  For example, in two of the cited cases, *Gesualdi v. Quadrozzi Equip. Leasing Corp*. and *Ferrara v. K&W Logistics LLC,* the district

---

persuasively establish that a reasonable client would have selected out-of-district counsel because doing so would likely (not just possibly) produce a substantially better net result." *Simmons*, 575 F.3d at 175.  In this case, however, plaintiffs have never established, let alone argued, that it was reasonable for them to retain CWS, an out-of-district counsel.  In any event, the court sees no reason why a local counsel would not have been able to handle this case and produce a result identical to that obtained by CWS.

courts applied hourly rates similar to plaintiffs' requested rates without expressly providing the specific basis for applying such hourly rates. (*See* Adler Default Decl., Exhs. H & I, *Gesualdi v. Quadrozzi Equip. Leasing Corp.*, No. 11-CV-115, at *3 (E.D.N.Y. Dec. 11, 2012); Adler Default Decl., Exh. S, *Ferrara v. K&W Logistics LLC,* No. 09-CV-3412, at *3 (E.D.N.Y. Sept. 30, 2010).)

Likewise, in three of the Eastern District cases cited by plaintiffs – (1) *Ferrara v. Joseph Speizio Excavating Corp.*; (2) *Ferrara v. Nexus Mech., Inc.*; and (3) *Ferrara v. United Ornamentals Inc.* — the district courts applied hourly rates similar to plaintiffs' requested rates here without analysis of the reasonableness of such rates. (*See* Adler Default Decl., Exh. F, *Ferrara v. Joseph Speizio Excavating Corp.*, No. 11-CV-764 (E.D.N.Y. Mar. 21, 2012); Adler Default Decl., Exh. D, *Ferrara v. Nexus Mech., Inc.*, No. 11-CV-2774 (E.D.N.Y. Mar. 12, 2012); Adler Default Decl., Exh. Q, *Ferrara v. United Ornamentals Inc.*, No. 09-CV-3411 (E.D.N.Y. June 23, 2009).)

Moreover, in two of the cited cases, *Ferrara v. Atlas Concrete Structures Corp.* and *Ferrara v. BD Haulers Inc.*, the magistrate judges recommended hourly rates similar to plaintiffs' requested hourly rates but did not explain why such rates were reasonable; nor were any persuasive or controlling

19

authorities cited to justify such heightened rates. (Adler Default Decl., Exh. K, *Ferrara v. Atlas Concrete Structures Corp.*, No. 11-CV-2775, at *9 (E.D.N.Y. May 17, 2012); Adler Default Decl., Exh. C, *Ferrara v. BD Haulers Inc.*, No. 11-CV-940, at *9 (E.D.N.Y. Jan. 31, 2012).) Thereafter, the district courts in both cases approved these recommendations without a *de novo* review of the reasonableness of the hourly rates. (*See* Adler Default Decl., Exhs. J and B.)

Second, although three of the older cases cited by plaintiffs provide some analysis and reasoning for awarding heightened hourly rates, the court finds such reasoning and analysis unpersuasive in this case. In *King v. Unique Rigging Corp.*, No. 01-CV-3797, 2006 WL 3335011, at *4 (E.D.N.Y. Oct. 27, 2006), *La Barbera v. Cyn-Ken Driver Serv. Co.*, No. 06-CV-4445, 2007 WL 2908072, at *8-10 (E.D.N.Y. Oct. 5, 2007), and *La Barbera v. Fed. Metal & Glass Corp.*, 666 F. Supp. 2d 341, 353-54 (E.D.N.Y. 2009), the magistrate judges recommended hourly rates similar to some of plaintiffs' requested rates and provided analysis for awarding such rates, which were subsequently adopted by the district courts. None of these cases, however, provide a compelling basis to sustain plaintiffs' objections in this case; indeed, in *King*, the magistrate judge acknowledged that the requested rates were "somewhat higher than the rates

20

charged by others in the field," but nonetheless awarded the higher rates after briefly concluding that such heightened rates were appropriate. 2006 WL 3335011, at *4.

Furthermore, none of the cases to which plaintiffs cite require this court to apply plaintiffs' heightened hourly rates. Indeed, "an excessive award [that] has been approved in the past does not bind a subsequent district court performing *de novo* 'reasonableness' review to that prior determination." *LaBarbera v. D. & R. Materials*, 588 F. Supp. 2d 343, 348-49 (E.D.N.Y. 2008); *see also LaBarbera v. Abbey Tool & Indus. Supply Co.*, No. 07-CV-3114, 2008 WL 4198546, at *7 (E.D.N.Y. Sept. 5, 2008) ("I recognize that the Trustees have previously succeeded in requesting . . . an hourly rate of $250 for the same attorney who represents them in this case . . . . [However,] in light of *Arbor Hill* . . ., past practice is no longer a sufficient basis for requiring a defendant to subsidize the plaintiffs' choice of counsel who charges more than other similarly situated attorneys in this district . . . .").[8]

Third, the court further notes that other recent opinions in this district undermine plaintiffs' objection. In

---

[8] Plaintiffs cite two more unpublished Eastern District opinions, *Ferrara v. High Power Trucking Corp.*, No. 09-CV-4697 (E.D.N.Y. May 17, 2010) and *La Barbera v. Audax Constr. Corp.*, No. 02-CV-582 (E.D.N.Y. May 19, 2009). Neither of these cases provides any persuasive basis to depart from Judge Reyes' recommended hourly rates, which the court finds to be reasonable under the circumstances.

fact, the court has located several recent Eastern District
ERISA-default cases, in which CWS was counsel, where courts have
reduced the requested hourly rates to rates even lower than
those recommended by Judge Reyes in this case. *See, e.g.*,
*Gesualdi v. Tapia Trucking LLC*, No. 11-CV-4174, 2012 WL 7658194,
at *5 (E.D.N.Y. Oct. 15, 2012) (reducing hourly rates of CWS's
associates, one of whom was junior associate Ahmed, from $225 to
$150 and $100 and reducing hourly rates of CWS's paralegals from
$100 to $75), *adopted by* 2013 WL 831134 (E.D.N.Y. Mar. 6, 2013)
(overruling plaintiffs' objection to reduced hourly rates);
*Gesualdi v. Loriann Trucking Co.*, No. 11-CV-5984, 2012 WL
3887205, at *9 (E.D.N.Y. July 27, 2012) (reducing hourly rates
of CWS's junior associates, one of whom was junior associate
Ahmed, from $225 to $100 and $150 and reducing hourly rates of
CWS's paralegals from $100 to $75), *adopted by* 2012 WL 3887170
(E.D.N.Y. Sept. 6, 2012); *Ferrara v. CMR Contracting LLC*, 848 F.
Supp. 2d 304, 314 (E.D.N.Y. 2012) (reducing hourly rates of
CWS's paralegals from $90 to $75); *Ferrara v. Metro D Excavation
& Found., Inc.*, No. 10-CV-4215, 2011 WL 3610896, at *7 (E.D.N.Y.
July 7, 2011) (reducing hourly rates of CWS's senior associates
Adler and Leeds from $275 to $250 and reducing hourly rates of
CWS's paralegals from $90 to $80), *adopted by* 2011 WL 3625448
(E.D.N.Y. Aug. 16, 2011).  These cases demonstrate that

plaintiffs' requested hourly rates in this case are unreasonably excessive in this district.  Accordingly, the court finds that Judge Reyes' reduced rates are reasonable and, in fact, generous to plaintiffs' counsel.

**2.  Complexity of This Action**

Additionally, plaintiffs urge the court to award the requested rates due to the complex single employer/alter ego theory of liability pursued in this action.  Plaintiffs specifically cite to the portion of the R&R that states that this case encompasses an "atypical default judgment." (R&R at 18.)  Although the court agrees with both Judge Reyes and plaintiffs that this default action involves a relatively complex matter (as far as typical defaults are concerned), the court has already accounted for that factor by applying reasonable hourly rates at the higher end of the prevailing rates in this district.

Plaintiffs further argue that the significant time consumed in this matter relating to the single employer/alter ego liability theory should be accounted for in the reasonableness of the rates. (*Id.*)  In support of this argument, plaintiffs cite to *Best Friends Trucking*, 2010 WL 1692509, at *2, in which the district court modified in part the magistrate judge's recommendation to reduce the plaintiff's requested

23

attorneys' fees.  According to plaintiffs, the district court in *Best Friends Trucking* explained that, "[d]espite defendant's default in this straightforward ERISA action, and despite [counsel's] acknowledged expertise in ERISA litigation, the work required of plaintiffs' counsel was time-consuming and painstaking, and resulted in the recovery of a significant amount of unpaid contributions." (Pls.' Obj. at 5-6 (quoting *Best Friends Trucking*, 2010 WL 1692509, at *2).)

Plaintiffs, however, mischaracterize the quoted passage in *Best Friends Trucking*.  In that quoted passage, the district court was discussing the reasonableness of the requested *billed hours*, not the reasonableness of the requested hourly rates. *Best Friends Trucking*, 2010 WL 1692509, at *2. Accordingly, *Best Friends Trucking* is inapposite with respect to this court's determination of a reasonable hourly rate and does not support plaintiffs' contention that the complexity of this ERISA-default warrants the heightened hourly rates requested by plaintiffs.

3.   **Remedial Purpose of ERISA**

Finally, plaintiffs maintain that their requested rates are reasonable in light of ERISA's remedial purpose, which requires plaintiffs "to pursue aggressive collection efforts." (Pls.' Obj. at 6.)  This argument is unavailing and does not

24

support the reasonableness of plaintiffs' requested rates.  The court's reduction of plaintiff's requested hourly rates in this case does not "run[] contrary to ERISA's remedial purpose." (*Id.*)  That ERISA entitles plaintiffs to recover *reasonable* attorneys' fees does not suggest that plaintiffs may recover excessive attorneys' fees that are untethered to the prevailing rates in this district.  Contrary to plaintiffs' assertion, the court's adoption of the R&R's recommended reasonable hourly rates is fully consistent with ERISA's remedial purpose.

## II. Clear Error Review

Upon careful review of the R&R, the record before the court, and the relevant case law, the court finds no clear error in the portions of the R&R to which no objection has been made.[9]

### CONCLUSION

For the reasons set forth above and in Judge Reyes' thorough and well-reasoned R&R, the court grants plaintiffs' Motion for Default Judgment and orders that judgment be entered

_____

[9] In the Preliminary Statement of their limited objection, plaintiffs briefly state that the R&R "makes no reference to the pre-July 2011 agreed-upon rates, though attorney time in this action was expended prior to that date." (Pls.' Obj. at 2.)  This conclusory assertion is not construed as a formal objection to the R&R, and this matter is therefore deemed waived on any further judicial review. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  Despite the lack of a specific objection, the court, in an excess of caution, has conducted a *de novo* review of the record and the R&R concerning this matter.  Although Judge Reyes did not explicitly reference the pre-July 2011 rates or billed hours in his R&R and did not provide a detailed basis for his calculations, the court finds that Judge Reyes accurately computed plaintiffs' award of reasonable attorneys' fees and correctly accounted for hours expended by CWS attorneys prior to July 2011.

in favor of plaintiffs and against defendant AAP in the amount
of $233,590.59 for unpaid benefit contributions; $262,567.42 for
pre-judgment interest through February 15, 2013, plus per diem
interest at the rate of $115.09 until entry of final judgment to
be calculated by the Clerk of the Court; liquidated damages in
the amount equal to pre-judgment interest as calculated by the
Clerk of the Court at the time final judgment is entered;
$9,054.19 for unpaid audit fees; $58,418.00 for attorneys' fees;
$7,154.57 for costs; less the $15,000 settlement between
plaintiffs and defendants Professional Pavers and Lopes; and
post-judgment interest pursuant to 28 U.S.C. § 1961.
Plaintiffs' request for injunctive relief is denied.

   The Clerk of Court is respectfully requested to enter
judgment in accordance with this Order and to close this case.
Counsel for plaintiffs is respectfully requested to serve a copy
of this Order on all defendants and note service on the docket
no later than March 29, 2013.

    **SO ORDERED.**

Dated:  March 23, 2013
    Brooklyn, New York

          _____/s/_____
          Kiyo A. Matsumoto
          United States District Judge
          Eastern District of New York

26